CITY OF CHARLOTTE v. E. D. SHEPARD & CO.

(Decided April 19, 1898).

*Municipal Corporation—Municipal Bonds, Prerequisites to Issue—Power to Levy Tax Implied in Power to Issue—Constitutional Law—Statute, Defective Passage of.*

1. When a municipal corporation, by a valid Act of the General Assembly and an affirmative vote of approval by a majority of its qualified voters, has acquired the right to create a debt and issue bonds therefor (Section 14, Article II of the Constitution), such authority carries with it the power to levy the taxes necessary to pay such bonds and the accruing interest thereon. (Reasons for former decision in same case, 120 N. C., 411, overruled).

2. Section 7 of Article VII, forbidding a municipal corporation to levy any taxes except for necessary expenses, unless by the approval of a majority of the qualified voters therein, does not require that the power to levy a tax shall be *expressly* granted in a legislative Act authorizing the creation of a debt and the issuing of bonds therefor and the submission of the same to the vote of the qualified voters. (Reasons for former decision in same case, 120 N. C., 411, overruled).

3. That part of Section 7 of Article VII of the Constitution, forbidding the levy of any taxes by a municipal corporation except for necessary expenses, unless by a vote of the majority of the qualified voters, if intended to have any separate and independent meaning, applies only to such indebtedness as has not been submitted to a vote of the people.

4. Chapter 255, Private Acts of 1891, not having been passed with the formalities required by Section 14 of Article II of the Constitution, is void, and confers no authority upon the city of Charlotte to create the debt and issue the bonds therein provided for.

PETITION by plaintiff to rehear the case between same parties, decided at February Term, 1897, and reported in 120 N. C. R., 411.

*Messrs. Burwell, Walker & Cansler* for plaintiff (petitioner).

*Mr. James A. Bell, contra.*

FURCHES, J.: To make the bonds of a municipal corporation valid and binding as evidence of an indebtedness of such municipality, two things are necessary:

There must be an Act of the General Assembly passed and ratified as required by the Constitution, Article II, Section 14, authorizing the creation of such debt and the issue of such bonds; and, upon this legislative authority, the proposition to create such debt and to issue bonds thereon must be submitted to the popular vote of the municipality, and must receive the sanction of a majority of the qualified voters at an election held for that purpose.

When this is done, that is, when the municipality has the legislative authority, as provided by the Constitution, to submit the question; has submitted the same, and it has been approved by a majority of the qualified voters, the municipality then has the power to create the debt and to issue the bonds. *Railroad* v. *Commissioners*, 116 N. C., 563.

When such corporation has thus acquired the right to create the debt and to issue the bonds, this power carries with it the power to levy the taxes necessary to pay said bonds and the accruing interest thereon. *Rawls County Court* v. *U. S.*, 105 U. S., 733; *U. S.* v. *New Orleans*, 98 U. S., 381. It is admitted that these cases are direct authority for this position, if there is no public law to the contrary, but it is suggested that Article VII, Section 7 of the Constitution provides otherwise, and therefore the doctrine declared in these cases does not apply, and that it is necessary that the power to tax should be *expressly* granted in the legislative Act. We

do not think Article VII, Section 7, nor any other pro-
vision of the Constitution, contains any such require-
ment as this.    If it did, we would feel bound by it, no
matter what might be held to be the general rule in
other jurisdictions.    That clause of Article VII, Section
7 of the Constitution, if intended to have any separate
and independent meaning, was only intended to apply
to such indebtedness as had not been submitted to the
vote of the people.

We cannot believe that it was ever intended by this
section of the Constitution to authorize the creation of
a debt, without authorizing the power to pay the same.
And a municipal corporation has no other means of pay-
ing but by taxation.

This provision of the Constitution has been a part of
the organic law of the State for thirty years, and while
our reports are full of cases arising under this section
of the Constitution, this construction has not been con-
tended for until now.    We do not mention this as a
sufficient reason for holding as we do in this opinion, if
it plainly appeared that the construction contended for
by the plaintiff is the correct construction of the Con-
stitution, but only as a reason why this construction
contended for by the plaintiff is not manifestly correct.

Our opinion, then, is that where the Act authorizes
the creation of the debt and the issue of the bonds, and
is approved by the vote of a majority, this, by necessary
implication, authorizes the payment and the necessary
levy of taxes to do so.    In this case the plaintiff had an
Act of the Legislature, in form authorizing the crea-
tion of the debt, the submission of the matter to the
voters, and the issue of bonds.

But the facts agreed, and, as they appear in the rec-
ord, show that the Act of 1891 (this being the Act that

authorizes the creation of this debt, the issue of bonds and the levy of taxes, if any Act does), was not read on three several days, and the yeas and nays recorded as provided by Article II, Section 14 of the Constitution. This being so, the said Act, so far as giving authority for the creation of this debt and the issue of bonds, is a nullity and affords no authority therefor. *Bank* v. *Commissioners*, 119 N. C., 214; *Commissioners* v. *Snuggs*, 121 N. C., 394; *Mays* v. *Commissioners*, at this Term, *Lewis* v. *Pine County*, 156 U. S., 55.

The learned counsel for the plaintiff undertook to distinguish this case from *Bank* v. *Commissioners* and *Commissioners* v. *Snuggs*, but we are not able to see the distinction. And this case, so far as it depends on the passage of the Act, is governed by those cases.

The judgment of this Court at the last term is affirmed, but, for the reasons · given in this opinion, anything that may have been said in the former opinion in conflict with this opinion is overruled.

Judgment affirmed.

FAIRCLOTH, C. J., concurring: The Act of 1891, Chapter 252, authorized the Board of Aldermen of Charlotte to issue coupon bonds for such purposes as in their opinion will promote the general welfare of the city; provided, the whole bonded indebtedness of the city should at no time exceed $500,000, and provided that no debt shall be created nor bonds issued, unless the question of creating the debt and issuing the bonds be approved by a majority of the qualified registered voters, at an election provided for in the Act. It is admitted that such approval was given by the majority, also that, if the bonds for the $250,000 were issued, the whole city indebtedness would be less than $500,000.

No question of levying a tax to pay said bonds was submitted to the people, and has, at no time, been voted on by the voters. The question, then, is presented whether the Board, having acquired authority by complying with the provisions of said Act, to contract the debt and issue bonds for paying the same, and having made such contracts, has an implied authority to levy taxes to meet this obligation. I think they have. This is the only question.

I think Article VII, Section 7, contains, in substance, two clauses on the condition expressed therein. 1, Authority to contract a debt. 2, Authority to pay the debt by levying a tax, which is the only way a city corporation can pay anything. If the question submitted both clauses, there would be no controversy.

If A owes B $100, it is not necessary for A to promise to pay it. The law implies the promise and compels payment. That is to say, when the *indebitatus* is legally established, the law implies the *assumpsit* and compels payment.

Therefore, I conclude when the voters have authorized their agent to contract a debt for their benefit, and it has been done, they are not at liberty to repudiate by voting against a tax levy. In Article VII, Section 7, I see a limitation, when the proposition to contract a debt and levy the tax is made, without the tax payers' approval, but when he has authorized the debt to be contracted, and the bonds issued, then there is no longer any limitation. I would not like, in the absence of express language, to hold, by construction merely, upon a given state of facts, that the Constitution intends to forbid what is required by general law and equity to be done. *Ralls* v. *U. S.*, 105 U. S., page 733.

On the question of going behind the ratification of an

Act of the Assembly and receiving the journals to show that the words "aye" and "nay," etc., were not entered on the journals, I have fully expressed my opinion in *Carr* v. *Coke*, 116 N. C., 223; *Bank* v. *Commissioners*, 119 N. C., 214, and *Commissioners* v. *Snuggs*, 121 N. C., 394.

The majority of the Court having announced a different opinion, I feel it now my duty to acquiesce in their conclusion.