L. P. HORNTHALL et al. v. COMMISSIONERS OF WASHINGTON COUNTY.

(Decided February 27, 1900.)

*Public Roads—Worked by Taxation—Special Act—Limited Assessment—Lowest Bidder.*

1. Where, by a special act for Washington County, Laws 1897, chap. 242 (since repealed), the mode of working the public roads by taxation was adopted, the annual assessment limited to a tax of 30 cents on the poll and 10 cents on the $100 worth of assessed property, and the contract to be let to the lowest bidder; the specified rate may not be exceeded, nor may any part of the general funds of the county be applied in payment of contractor.

2. Where the work was done, but the amount bid was in excess of the fund raised under the permitted rate, an action can not be maintained for the deficiency.

CIVIL ACTION upon a county road order payable to Frank Gray for $267.50 on account of fourth quarter's pay keeping in repair the public roads in Plymouth Township, and by him assigned to plaintiff L. P. Hornthall, tried before *Starbuck, J.,* at Fall Term, 1899, of WASHINGTON Superior Court.

The defense set up in the answer was, that under the County Road Law, 1897, chap. 242, the repairs of the public roads were let out to lowest bidder, but that the annual assessment for payment of contractor was limited to a tax of 30 cents on the poll and 10 cents on the $100 worth of assessed property; that the amount bid was in excess of the tax levied, collected and expended in payment of road orders, and that there was nothing left to pay on the order in suit; also, that the said order was illegal and not a valid debt against the county, because issued after the tax levy had been exhausted.

The plaintiff demurred to the answer. His Honor sustianed the demurrer, and gave judgment in favor of plaintiff upon his claim. The defendant excepted and appealed.

*Mr. A. O. Gaylord,* for defendants, (appellant).
*Mr. H. S. Ward,* for plaintiffs.

MONTGOMERY, J., writes the opinion of the Court.
FURCHES, J., writes dissenting opinion.
FAIRCLOTH, C. J., also dissents.

MONTGOMERY, J. This is an action brought by the plaintiff, who is the assignee of Frank Gray, against the present Board of Commissioners of Washington County, for the recovery of an amount alleged to be due upon a county order made payable to Gray, and issued by a former Board of Commissioners of that county. There was a judgment below in favor of the plaintiff, from which the defendants appealed.

The General Assembly at its session of 1897 altered the then existing law upon the manner of working the public roads (which was by the impressment of a certain class of its male able-bodied citizens as were either unable or unwilling to pay the pecuniary equivalent of such labor), so far as the county of Washington was concerned. The act established the plan of taxation for the old system, a step wisely progressive, and juster, by far; and provided for the annual assessment and collection of a tax of an amount equal to 30 cents on the poll, and 10 cents on each $100 worth of the assessed property of the county, the amount to be used in payment for the work to be done each year on the public roads of the county. The roads were to be let out to be worked to the lowest bidder.

The plaintiff and his assignor, Gray, one of the con-

tractors, knew at the time the roads were let to the lowest bidder that the sum of the bids exceeded, by double, the amount provided for in the act. The entire amount raised by the act has been disbursed properly.

We are of the opinion that the action can not be maintained. It is true, as appears in the admissions in the pleadings, that the work was done by the contractors, and that the county has gotten the benefit of their work, and it would seem that they ought to be compensated for the same. But as the amount provided for under the act was a specific fund, it is beyond the power of the defendants to use any part of the general funds of the county or to levy any tax in excess of that which was provided by the act for the payment of the order sued upon.

The Commissioners, of their own motion, under the old system of working the roads, had no power to levy a tax for any amount whatever to be used for the purpose of having the public roads worked, and the Act of 1897 authorized only a specific rate of taxation and amount for that purpose.

There was error in the court below in the rendering of the judgment, and the same must be reversed and set aside.

Error.

FURCHES, J., dissenting. The Legislature of 1897, chap. 242, changed the method of working the public roads of Washington County, and provided that, after July of that year, they should be worked by contract. By sec. 3 of that act it is provided, "That on the first Monday in July of every year the County Commissioners of Washington County shall let to the lowest bidder all the different public roads in said county, to be put and kept in good order by the contractor or contractors for the term of twelve months;" and that the

lowest bidder or contractor shall enter into bond, the amount of which shall be fixed by said Commissioners, for the faithful performance of his or their contract. It is further provided that if the said contractor fails to keep his road in good condition the Commissioners may retain any money due such contractor, and may sue him on his bond.

It is admitted that the roads were let to the lowest bidder on the first day of July, 1897; that the assignor of the order sued on (for $267.50), was the lowest bidder and contractor for a part of said roads, and that he complied with his contract by giving the bond and keeping up the roads.

But it is provided in said act that the Commissioners of the county shall levy a special tax of 30 cents on the poll, and 10 cents on the $100 taxable property; that the money collected from this levy shall be kept separate from the money collected on the general levy, and shall only be used for the purpose of working the roads of the county; and that said contractor shall be paid quarterly for said work. It turned out that all of said contracts, taken together, amounted to something over $2,700, and that the money levied and collected under this special act amounted to something over $1,700, and that the Legislature of 1899 repealed the act providing for working the roads of the said county by contract (chap. 242, Acts of 1897); that all the money collected by this special act has been paid out, and payment of the order sued on was refused for the reason that there was no money in the treasury to pay the same, and, also, for the reason, as alleged by the defendant, that the same is illegal and void, because the whole amount for which all the roads in the county were bid off exceeded the amount that was raised, or could be raised under the levy under the special tax provision of said act.

This last contention of the defendant is adopted by a majority of the Court, and it is to this view of the case I dissent.

It seems to me that the Court has not distinguished between the power to contract and the ability to pay.

A contract is an agreement of two or more parties, for a valuable consideration, to do, or not to do, the thing agreed upon. There must be a contractor, a contractee, and the thing contracted for, or to be done. In this case there is a contractor, a contractee, and the thing to be done, and the consideration—the work to be done, and the price to be paid for the work. If this contract had been between individuals—natural persons—I suppose no lawyer would contend that it was not binding on the parties. And I understand that the same rule obtains, and the same binding obligation exists, between a corporation, or the county of Washington and the plaintiff, that obtains between individuals, if the Commissioners had the power to make the contract. It seems to me that it must be admitted they had this power, as the act expressly authorized and required them to let the roads and to make the contract. The only ground that can be urged, as it seems to me, against this power in the Commissioners, is that the act provided for the levy of this special tax without its being submitted to a vote of the people. But this was not necessary even to make this tax levy valid, if it was for a necessary county expense. *McCless v. Meekings,* 117 N. C., 28; *Vaughan v. Commissioners, Ibid,* 429. The making, repairing and keeping the public roads of a county in good condition is a necessary county expense. *Broadnax v. Groom,* 64 N. C., 244; *Satterthwaite v. Commissioners,* 76 N. C., 154, citing *Broadnax v. Groom,* with approval; *Vaughan v. Commissioners, supra.*

It was admitted that public bridges were necessary county

charges, and this is only so when they are a part of the public roads, and only so because they are a part of the public roads. *Greenleaf v. Commissioners,* 122 N. C., 30.

It would seem that this was sufficient to establish the validity of the contract, and, if so, to establish the validity of the order sued on. But defendant says not so, because the special tax collected for road purposes was not sufficient to pay the order. Can this be so? Can it be that because a debtor has no means, out of which he can pay his debts, this vitiates and makes void the obligation to pay? Suppose the Commissioners of Washington County had contracted with the plaintiff to build a public bridge on one of the highways of the county, and the plaintiff had built the bridge according to contract, but when he got it done, and the defendant accepted the bridge, the defendant had no money to pay for it; will it be contended that this vitiates the contract, and invalidates and renders the plaintiff's claim for building the bridge void? Suppose the Legislature had changed the mode of working the public roads of Washington County (as it did), and provided and required the Commissioners to let them out to the lowest bidder (as it did), without providing for the levy and collection of any extra or special tax; will it be contended that this rendered the contract void? And if it would not, as I think it would not, how can it be contended that, because the act provided for the levy of the special tax to pay or to aid in paying the contractors for working the roads, this would vitiate and make void such contracts?

But defendants say that plaintiff knew that this special tax would not raise money enough. This may be so, and it may not be so. It may be that this was the first contract let, and, if so, he could not tell what the others would be taken at. But suppose he did know it, would that vitiate the contract?

Even if this tax was unconstitutional, that would not make the contract to work the road void. Take the case of building the bridge that I have supposed, and suppose that, when he took the contract to build the bridge he knew the county had no money on hand, and that a levy within the constitutional limitation would not raise money enough to defray the ordinary expenses of the county and pay for building the bridge; is it contended that this vitiated and annulled the contract and destroyed the plaintiff's claim for building the bridge? He might have well thought the taxable property of the county would increase, or that the Legislature would pass a special enabling act, and that he would be paid.

As the plaintiff has withdrawn his application for a mandamus, the question of payment is not before us. But as that question was discussed, I will say that this Court has said that where there is the power to contract a debt, that this power carried with it the power and duty to pay. *City of Charlotte v. Shepard,* 122 N. C., 602. But of course this right can not be enforced when it conflicts with the constitutional limitation of taxation, without legislative aid, and, while the plaintiff has a legal claim against the defendant, for this reason he may not be able to enforce it.

It has been contended that the cases of *Barksdale v. Commissioners,* 93 N. C., 472; *Board of Education v. Commissioners,* 111 N. C., 481, and the same case in 113 N. C., 379, are in point, and sustain the opinion of the Court. But upon examination it will be found that they are not in point, and do not bear upon this case. They are all proceedings to compel the levy and collection of unconstitutional taxes, and nothing more. In my opinion the judgment should be affirmed.

FAIRCLOTH, C. J., also dissents.