COMMISSIONERS OF NEW HANOVER COUNTY v. DEROSSET.

(Filed December 3, 1901.)

1. STATUTES—*Ratification—Evidence—Presumptions.*

The certificate of the presiding officers of the general assembly is conclusive evidence that a bill was read and passed three several readings in each House.

2. STATUTES—*Legislative Journals—Yeas and · Nays—Presumptions—The Constitution, Art. II, Sec. 14.*

Where certified extracts from the legislative journal offered in evidence give only the number of yeas and nays, without showing that the names of the members voting were recorded, it will not be presumed that they were recorded.

3. STATUTES—*Enactment—Taxation—The Constitution, Art. II, Sec. 14—Yeas and Nays—Journals.*

An act to levy a tax by a county, *not for necessary expenses,* must be read three several times and passed on three different days, and the names of those voting on the second and third readings entered on the journal.

ACTION by the Board of Commissioners of New Hanover County against A. L. DeRosset, heard by Judge *O. H. Allen,* at Chambers, on .. day of September, 1901. From judgment for plaintiff, the defendant appealed.

*W. B. McKoy,* for the plaintiff.
*Bellamy & Peschau,* for the defendant.

CLARK, J. This is a controversy submitted without action, under The Code, sec. 567. The question presented is whether Chapter 314, Laws 1901, authorizing New Hanover to issue $50,000 in bonds for road improvement, is valid and constitutional. It appears that the proposition was duly and properly submitted to the registered voters of the county, a majority of whom duly authorized the issue of said bonds. The defendant, who has purchased said bonds, avers that he

is ready and willing to take and pay for the same, if ·they are valid and constitutional, but he denies that the act authorizing the election was passed in the manner required by Article II., sec. 14, of the Constitution, and that presents, as we understand it, the only question before us. The transcript sets out the following as a correct extract from the Journals:

### EXTRACT FROM SENATE JOURNAL.

Senate Chamber, Monday, February 18, 1901.

· Reports of standing committees are submitted as follows: Bill introduced, S. B. 757, Bill to permit New Hanover County to issue bonds for road improvements, with a favorable recommendation.

Senate Chamber, February 19, 1901.

Bills and resolutions on the Calendar are taken up and disposed of as follows:

Second reading:

S. B. 757, Bill to permit New Hanover County to issue bonds for road improvements, upon second reading. The · bill passes second reading, ayes 36, noes none, as follows: Those voting in the affirmative are, ayes 36, noes none.

### SENATE JOURNAL.

Senate Chamber, Wednesday, February 20, 1901.

Bills and resolutions on the Calendar are taken up and disposed of as follows: S. B. 757, Bill to permit New Hanover County to issue bonds for road improvements, upon third reading. The bill passes third reading, ayes 43, noes none, as follows: Those voting in the affirmative are, ayes 43, noes none. The bill is ordered sent to the House of Representatives without engrossment.

SENATE JOURNAL.

Senate Chamber, Friday, March 1, 1901.

Mr. Smith, from the Committee on Enrollment of Bills, reports the following bills and resolutions as properly enrolled, which are duly ratified and sent to the office of Secretary of State: S. B. 757, H. B. 1494, An act to issue bonds for road improvements of New Hanover County.

Extract from House Journal:

HOUSE OF REPRESENTATIVES.

Thursday, February 21, 1901.

A message is received from the Senate transmitting the following bills, which are read the first time and disposed of as follows: S. B. 757, H. B. 1494, Bill to permit New Hanover County to issue bonds for road improvements. Referred to the Committee on Public Roads, Ferries and Turnpikes.

HOUSE OF REPRESENTATIVES.

Wednesday, February 27, 1901.

Bills and resolutions are reported from standing committees, read by their titles together with the reports accompanying them, and take their place on the Calendar, as follows: By Mr. Ardrey, for the Committee on Public Roads and Turnpikes, H. B. 1494, S. B. 757, A bill to be entitled an act to permit New Hanover County to issue bonds for road improvements, with a favorable report.

HOUSE OF REPRESENTATIVES.

Wednesday, February 27, 1901.

Bills and resolutions on the Calendar are taken up and disposed of, as follows: H. B. 1494, S. B. 757, A bill to be entitled an act to permit New Hanover County to issue

bonds for road improvements. Passes its second reading by the following vote and is ordered placed on the Calendar. Those voting in the affirmative are: Ayes 91, noes none.

### HOUSE OF REPRESENTATIVES.

Thursday, February 28, 1901.

Bills and resolutions on the Calendar are taken up and disposed of as follows: H. B. 1494, S. B. 757, A bill to be entitled an act to permit New Hanover County to issue bonds for road improvements. Passes its third reading by the following vote, and is ordered enrolled for ratification. Those voting in the affirmative are: Ayes 82, noes none.

### HOUSE OF REPRESENTATIVES.

Friday, March 1, 1901.

Mr. Allen, for the Committee on Enrolled Bills, reports the following bills and resolutions properly enrolled, which are duly ratified and sent to the office of Secretary of State: S. B. 757, H. B. 1494, An act to issue bonds for road improvements in New Hanover County.

The point intended to be presented seems to be, for we are not favored with either brief or argument from defendant, whether the act is valid, because the Senate Journal is silent as to the passage of the bill on its first reading, though that fact appears from the endorsement on the bill, as certified by the Secretary of State, and is agreed to by the parties hereto, and is found as a fact by the Judge.

Almost the identical point is presented in the case of *Black v. Commissioners,* at this term. Constitutional requirements can not be dispensed with in any particular by the Courts. But passing by for the present the fact that the transcript does not show that the ayes and noes were entered, by the only possible proof, the record of the names,

and assuming for the present that they were so entered, it seems to us that the bill was passed in the constitutional mode. The ayes and noes are only required to be entered on the Journals on the second and third readings in each House, and the Journals are the sole evidence of that fact. *Bank v. Commissioners,* 119 N. C., 214, and all the cases since, down to and including *Black v. Commissioners* at this term. The certificate of the Speakers is conclusive evidence that the bill was read and passed three several readings in each House. *Carr v. Coke,* 116 N. C., 223. The only additional requirement of Article II, sec. 14, of the Constitution, "which readings shall have been on three several days," is not required to be shown by the Journals, though it is necessarily so shown as to the second and third readings in each House, and is here also shown by the Journal as to the first reading in the House of Representatives. As to the first reading in the Senate, that it passed such reading is proved conclusively, as we have said, by the ratification, and that it was on 15th February, a different date from the second reading, is found as a fact by the Court from the endorsement on the original bill. Such fact not being required to be shown by the Journals, and not being contradicted by them, the finding of his Honor, there being evidence, is conclusive upon us.

The Constitution requires both ayes and noes to be entered, not merely the ayes, and of course if there were no noes, that should be stated. "The entry, showing *who voted* on the bill and *how* they voted, must be made before the bill can ever become a law," and "the names of the legislators who vote on the question shall be known to the people in the enrollment of their names on the Journals." MONTGOMERY, J., in *Commissioners v. Snuggs,* 121 N.C., at pages 398, 399, and in *Smathers v. Commissioners,* 125 N. C., at page 486, attention is called to the defect that it does not affirmatively appear on the Journal *"that there were no nays."* As the Consti-

tution requires both the yeas and nays to be entered, either the nays must be entered, or the Journal should show affirmatively that there were none.    There is no presumption as to the regularity of a matter of this kind, but the condition precedent required by the Constitution must be complied with.    "A want of power" in such cases "can not be cured by recitals or eliminated by estoppels."    *Commissioners v. Call,* 123 N. C., 311.    No constitutional requirement *"is directory, but all are mandatory."    Ibid,* 312; *Glenn v. Wray,* 126 N. C., at page 732.

If we could take the recitals in the transcript, there is no defect in this respect in the present case, as it appears that on each reading, except the last in the House, the Journal states "noes, none," and on such last reading there were some noes—the names being indicated by asterisks.

The transcript, however, is defective in that it does not set out, in copying the Journals, the names of those voting, as required by the Constitution, but simply states as above set out, "ayes 82. * * * Those voting in the affirmative are" * * *    We can not take it from this that the names were duly entered, and the Court can not take the recital nor the agreement of the parties as proof of the fact.    *Gatling v. Tarboro,* 78 N. C., 119.    The transcript should be a true copy from the Journal, and show affirmatively the matters required by the Constitution, *i. e.,* "The yeas and nays entered on the Journals on the second and third readings" in each House.

We can not conceive that this case was intended to rest upon the mere recitals in the Journals that the ayes and noes were entered, when they were in fact not entered—yet so the transcript would indicate.    We must think that there was an inadvertence, a gross inadvertence, in not giving a true transcript from the Journals instead of a mere recital; but deeming it an inadvertence, on account of the public

LOUGHRAN *v.* HICKORY.

interest involved, we have discussed and decided the points intended to be presented, so that another appeal may not be necessary, though, by reason of above omissions, we must hold that in rendering judgment sustaining the validity of the bonds upon this record there was

Error.