DANIEL ALLEN, FOR HIMSELF AND ALL OTHER TAXPAYERS OF THE CITY OF RALEIGH v. THE CITY OF RALEIGH ET AL.

(Filed 3 June, 1921.)

1. Constitutional Law—Taxation—Statutes—"Aye" and "No" Vote—Journals.

The provisions of Art. II, sec. 14, of the State's Constitution requiring, among other things, that the "Yea" and "Nay" vote shall be entered on the journal, in order for the people of the State, cities, or towns therein to pledge their faith or credit, etc., are mandatory, and the journals of each house, respectively, afford the only competent and sufficient evidence as to the procedure in a given case, and unless it affirmatively appears from these journals that the constitutional requirements have been complied with, the statute, in so far as it affects the specified measures, must be held invalid.

**2. Same—Amendments.**

Where a bill has passed both branches of Legislature, complying with our State Constitution, Art. II, sec. 14, as to the pledging of credit by the State, counties, cities, and towns, a motion to reconsider may be had by a *viva voce* vote; and where allowed its effect is to abrogate the vote passed on the question and to again bring it forward to be discussed and decided in the same manner as it was originally for the consideration and determination of the General Assembly; and for the act to be valid the final result must have complied with the constitutional requirements as to its reading on the several days, the taking of the "Aye" and "Nay" vote, and their proper entry upon the respective journals.

**3. Same—Repealing Clauses of Invalid Statutes.**

Where a statute enacted to afford the means to carry on the purposes of well ordered government in respect to debt and taxation has been declared unconstitutional and invalid, it will not be held that it was in the legislative contemplation that if these provisions failed the local governments be left without any powers in these necessary matters; nor will this result be affected by a repealing clause in the invalid statute, which contemplates that the new act would take the place of the former one that it purports to repeal; for in such instances the repealing clause falls with the invalid act, of which it is a part.

**4. Constitutional Law—Municipalities—Cities and Towns—Taxation.**

*Held*, the Municipal Finance Act of 1921, with its repealing clause, being unconstitutional and invalid as to contracting debts and levying taxes, the laws now in force and effective on these subjects are Consolidated Statutes, secs. 2818 to 2867, inclusive; and under these laws counties, cities, and towns and taxing districts are restricted from levying a tax rate that will realize an amount greater than 10 per cent in excess of the tax collected by them for the year 1919, and prohibited from further increasing their net municipal indebtedness by an amount greater than 10 per cent on the average assessed value of the property for the next preceding three years.

**5. Same—Injunction.**

The present proposed tax, to be levied by the defendant in this case, being an increase of its indebtedness in excess of the limit now imposed on cities, etc., by statute, its collection must be declared invalid, and further procedure to collect the same permanently enjoined.

APPEAL by defendant from *Connor, J.,* at the May Term, 1921, of WAKE, a jury trial having been duly waived.

On the hearing it appeared that the city of Raleigh, through its proper officials, in May, 1921, had passed two ordinances, one laying a tax of $1 on the one-hundred-dollar valuation of property subject to tax in the city limits, for current and general purposes for the years 1921 and 1922, a second ordinance of same date providing for the issuance of city bonds to the amount of $1,400,000 for the purpose of constructing and laying sewers, and had the purpose of presently carrying into effect the

provisions of these ordinances, and the suit is to restrain such purpose and have the ordinances declared void on the ground that the city government was without power to pass same, and for the reason chiefly that the statute purporting to confer such power and under which defendants claimed to act, Municipal Finance Act, 1921, had not been passed according to constitutional requirements of Art. II, sec. 14, of the Constitution; and further, that under existent conditions the laws in force and controlling on the subject are such as to render the proposed measures invalid.

The court being of opinion that the portions of the Municipal Finance Act under which the city government was endeavoring to proceed was unconstitutional, and that the proposed measures were in violation of the statutes applicable, gave judgment that the defendants be permanently enjoined, and defendants excepted and appealed.

*William B. Snow for plaintiff.*
*John W. Hinsdale, Jr., for defendants.*

HOKE, J.    The Constitution, Art. II, sec. 14, makes provision as follows: "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly, and passed three several readings, which readings shall have been on three different days, and agreed to by each house, respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal."

This provision of our organic law, said in some of the cases to have been established with a view of obtaining more careful deliberation on these important subjects of debt and taxation and insuring the presence of a lawful quorum and a proper placing of responsibility, has been very insistently enforced by the courts, and in various decisions construing the section it has been held that its provisions are mandatory, that the journals of each house respectively afford the only competent and sufficient evidence as to the procedure in a given case, and unless it affirmatively appears from these journals that the constitutional requirements have been complied with, the statute, in so far as it affects the specified measures, must be held invalid. *Guire v. Comrs.,* 177 N. C., 516; *Woodall v. Comrs.,* 176 N. C., 377; *Claywell v. Comrs.,* 173 N. C., 657; *Comrs. v. Bank,* 152 N. C., 387-390; *Comrs. of New Hanover County v. DeRosset,* 129 N. C., 275; *Comrs. v. Snuggs,* 121 N. C., 394; *Union Bank v. Comrs. of Oxford,* 119 N. C., 214.

This being the law applicable to the principal question presented, it appears from a perusal of the record, and his Honor so finds, that the statute containing the provisions as to incurring of debts and levying of taxes, under which the city is purporting to act, was read three times in the House of Representatives on three different days, and the yeas and nays on the second and third readings were entered on the House Journal as the Constitution requires; that the same formalities were originally observed in the Senate, but it appears further that for the purpose of allowing an amendment on motion the Senate reconsidered its action by which the bill passed its third reading. The bill was amended, and as amended was passed by *viva voce* vote, which was subsequently concurred in by the House, and that no third reading of the bill was afterwards had, on which the yeas and nays were entered in the Senate Journal. It is recognized that the motion to reconsider may be had by a *viva voce* vote even on a measure requiring an aye and no vote for its passage, 25 R. C. L., p. 883, citing *Andrews v. People,* 33 Colorado, 193, and in the absence of established rule to the contrary, it is uniformly held that when properly passed it abrogates and entirely nullifies the legislative action to which it relates, Cushing's Laws & Practice of Legislative Assemblies, secs. 1264-1278, inclusive; *State v. Foster,* 7 N. J. L., 101. In sec. 1278, the approved position is said to be: "When a motion to reconsider prevails it has a two-fold effect: first, it entirely abrogates the vote passed on the question, which is thereby ordered to be reconsidered; secondly, it again brings forward the question to be discussed and decided in the same manner as it was originally for the consideration and determination of the Assembly."

As a parliamentary motion it was devised and introduced for the purpose of enabling a legislative body to change its vote on a pending measure while still under its control, and to do so as stated by entirely abrogating its previous action, and both on reason and authority, therefore, as well as a matter of correct definition, such action must be considered as if it had never taken place. It thus appears that there has never been a third reading of this bill in the Senate on which the ayes and noes have been entered on the journal, and provisions of the law in question, appertaining to the incurring of indebtedness and the imposition of taxes, must be held unconstitutional and void, and this is so whether the amendment to the statute was or was not material. This being true, the questions further presented are: What is law now controlling on matters of this kind, and under such law can the proposed measures be upheld? The law we are considering purports to amend and reënact the Municipal Finance Act of the Consolidated Statutes, giving increased powers as to the contracting and providing for debts and levying taxes. It contains provision, however, among others, that

if any portion of the act should be declared invalid, it shall not affect the part that remains, but the objectionable features shall be "exscinded." Enacted to afford the municipalities of the State the means to carry on the purposes of well-ordered local government, it clearly did not contemplate that if these provisions failed, the local governments should be left without any powers whatever in these necessary matters, and although the act contains a general repealing clause as to inconsistent legislation, it is subject to the recognized principle of statutory construction that when a repealing statute is invalid the repealing clause itself fails with the statute of which it is a part. The position is very well stated in 25 R. C. L., title Statutes, sec. 166, at p. 913, as follows: "Where a repeal of a prior law is inserted in an act in order to secure the unobstructed operation of the act and the repealing law is itself held to be void, the provision for the repeal of the prior law will fall with it and will not be operative in the repeal of the prior law unless the language of the repealing clause is such as to leave no doubt as to its intention to repeal the former law in any event. Where, however, it is not clear that the Legislature, by a repealing clause attached to an unconstitutional act, intended to repeal a former statute upon the same subject except on the supposition that the new act would take the place of the former one the repealing clause falls with the act of which it is a part." And the authorities cited are in full support of the statement. *State v. Beend,* 121 Ind., 514; *People v. Meusching,* 187 N. Y., 8, reported also in 10 Anno. Cases, 101, and 10 L. R. A., N. S., p. 625; and *Robinson v. Goldsboro,* 122 N. C., 211, is in full recognition of the principle.

The portion of the finance act of 1921 appertaining to contracting debts and levying taxes having been declared invalid, and the general repealing clause and other portions of the law giving clear intimation that unless these important provisions should be upheld, the existent law on the subject should prevail, the municipal authorities can only proceed under the law as it existed when the attempted amendment was enacted, and must square their action with its requirements. On this question we find the existent law on the subject to be as contained in Consolidated Statutes, ch. 56, secs. 2918-69, inclusive, and as amended by the Revaluation Act, Laws 1919, ch. 84, and more especially in sec. 3 of the latter statute. As to the rate of taxation, the section of Consolidated Statutes based upon the old methods and prior assessments allowed the municipalities to levy a tax rate as high as $1.25 on the hundred-dollar valuation for general purposes, but this revaluation statute subsequently passed in sec. 3 referred to, being the only valid provision as to the rate of taxation now existent in reference to the revaluation, makes provision as follows:

"SEC. 3. The assessment made under the provisions of this act shall not be used as the basis for computation of taxes unless and until the

same has been approved by the General Assembly, and until the tax rates levied by the State have been revised by the General Assembly, and the tax rates levied by the counties, cities, and towns and special-tax districts of the State have been revised under rules to be laid down by the General Assembly, and such rates shall in all cases be so adjusted that an increase in revenue from the general property tax of not more than 10 per cent shall be levied and collected in the year 1920 than was levied in the year 1919 in the State, and in all counties, cities, towns, and special-tax districts of the State, the rates so levied in 1920 shall in all cases become the maximum rates that can be levied by the counties, cities, towns, and special-tax districts in any year thereafter until authority is given by the General Assembly to increase them: *Provided,* that fractions of cents may be disregarded in fixing the final modified rate of tax by the State, counties, municipalities, and all other tax districts."

From a perusal of this section it clearly appears that the tax rate now allowed and provided for must be one that will not increase the amount of taxes more than 10 per cent over the amount realized under the law of 1919, and that this shall be the maximum rate that can be levied by counties, cities, towns, and special-tax districts in any year thereafter until authority is given by the General Assembly to increase them. And as to incurring new indebtedness, C. S., 2943, the law now controlling on this question provides that an ordinance for the increase of indebtedness for purposes presented in this record shall not be allowed when same will have the effect of increasing the net debt of the city, etc., by an amount greater than 10 per cent on the average assessed value of property for the past three years. On the testimony offered, the Court finds as a fact that under the ordinances in question the levy of $1 on the hundred-dollar valuation of property and under the assessment now prevailing, the revenue will exceed the 10 per cent limitation, over the amount collected in the year 1919. And that by the proposed increase the net indebtedness of the city of Raleigh will exceed 10 per cent of the average annual valuation of its property for the preceding three years.

We concur, therefore, in his Honor's ruling on both propositions, and hold as a "conclusion of law" that the enforcement of both ordinances should be permanently enjoined, for that they are in excess of the powers conferred upon the city government as to rate of taxation and the incurring of further indebtedness. We have not adverted to the statutes on the subject passed at the special session of 1920, chs. 1 and 3, for the reason that the former only professes to apply to years 1919 and 1920, and the latter on matters relevant to this inquiry is expressly and specially repealed by the law of 1921, and in terms that clearly show that an absolute repeal in any event was intended. And if it were otherwise,

both of these laws in effect recognize and establish as the maximum limit of taxation the 10 per cent increase over the revenue yielded by the Laws of 1919. There is no error in the record, and the judgment restraining defendants is

Affirmed.